UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WELLCARE HEALTH PLANS, INC.,
and COMPREHENSIVE HEALTH
MANAGEMENT, INC.,

        Plaintiffs,

v.                                       CASE NO. 8:12-cv-713-T-30MAP

ERHARDT H.L. PREITAUER,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a breach of contract case involving two covenants: a non-compete agreement and a confidentiality agreement. WellCare Health Plans, Inc. and Comprehensive Health Management, Inc. (collectively "WellCare") seek a preliminary injunction against Erhardt H.L. Preitauer ("Preitauer"), a former employee who accepted employment with Schaller Anderson, Inc., an Aetna subsidiary (collectively "Aetna"). *See* doc. 4.[1] WellCare argues absent a preliminary injunction, it will suffer irreparable harm from Preitauer's breach of the covenants. WellCare's two count complaint alleges breach of contract and violation of the Florida Uniform Trade Secrets Act ("FUTSA"), §§ 688.001 - 688.009, Florida Statutes, for the use and disclosure of purported trade secrets. After a May 1, 2012, preliminary injunction hearing, the parties stipulated the state issued temporary restraining order

---

[1] The district judge referred this matter to me for a report and recommendation per 28 U.S.C. § 636.

reinstated by the district judge would remain in effect until resolution of WellCare's preliminary injunction motion. Upon consideration of the parties' submissions, I do not find Preitauer to be in breach of either covenant and I recommend denying WellCare's motion.

### A. Factual background

Aetna, like WellCare, provides Medicare and Medicaid services (doc. 2 at ¶38). Preitauer was employed by WellCare to head their government sponsored health care program expansion efforts in Hawaii (doc. 2 at ¶9). He never had any responsibilities at WellCare unrelated to the Hawaii expansion (doc. 14-1 at ¶29). Along with other WellCare personnel, Preitauer designed a health care plan model ("Hawaii Model") in response to Hawaii's request for a proposal ("RFP"), a model alleged to be "unique" and "innovative" (doc. 4 at p.7; doc. 2 at ¶17). It is the information Preitauer allegedly learned while developing, implementing, and refining the Hawaii Model that is alleged to be confidential, proprietary, and a trade secret (doc. 2 at ¶17). WellCare alleges this information consists of formulas, compilations, methods, techniques, and processes not readily ascertainable to third parties, and if they were, the information would unfairly yield economic benefit to that party (i.e. Aetna) (*Id.*). After the Hawaii Model proved successful, WellCare sought expansion into other markets; specifically, Illinois, Missouri, Texas, and Ohio (*Id.* at p. 8). The states in which Preitauer would be exclusively providing services during the one year non-compete period would include Illinois, Missouri, Texas, and Ohio (*Id.* at ¶40; doc. 14-1 at ¶47). WellCare argues that Preitauer will inevitably disclose the purported confidential information enabling Aetna to duplicate the Hawaii model without having to withstand the same growing

pains as WellCare. While he has not yet begun to work for Aetna, on February 12, 2012, Preitauer informed WellCare that he had accepted employment with Aetna.

*B. Standard of review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

*C. Discussion*

*1. likelihood of success on the merits*

The first factor in determining whether a preliminary injunction should issue is whether WellCare can show a substantial likelihood it will prevail on the merits. Based upon the record, WellCare has failed to demonstrate a substantial likelihood of success on the merits because it has failed to show any "legitimate business interests" which would warrant

protection as required by Florida law to enforce a covenant. Similarly, WellCare's argument that the knowledge Preitauer possesses is confidential and constitutes trade secrets, disclosure of which would potentially violate FUTSA, is unpersuasive. WellCare also does not convincingly evidence Preitauer's breach of either agreement.

Section 542.335(1), Florida Statutes, permits the enforcement of contracts restricting or prohibiting competition during or after the term of the restrictive covenant so long as such contracts are reasonable in time, area, and line of business. A party seeking to enforce a restrictive covenant must plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant and that the restriction is reasonably necessary to protect those legitimate business interests. Fla. Stat. § 542.335(1)(b) and (c). Legitimate business interests include trade secrets, as defined in Fla. Stat. § 688.002(4); valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers or clients; customer or client goodwill associated with a specific geographic location or specific marketing or trade area; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). If the party seeking enforcement of the restrictive covenant establishes a *prima facie* case, the party opposing enforcement then has the burden of establishing the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interests. Fla. Stat. § 542.335(1)(c). If the restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate interests, a court should modify the restraint and grant only the relief reasonably necessary to protect

such interest(s). *Id.* Florida law requires courts to construe restrictive covenants in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement and prevents courts from employing any rule of contract construction requiring the court to construe a restrictive covenant narrowly, against the restraint or against the drafter where legitimate business interests have been established. Fla. Stat. § 542.335(1)(h). If valid, a restrictive covenant may be enforced by, but not limited to, temporary or permanent injunctive relief. Fla. Stat. § 542.335(1)(j). A restrictive covenant not supported by any legitimate business interest, however, is unlawful and is void and unenforceable. Fla. Stat. § 542.335(1)(b).

### i. legitimate business interests

Florida law finds *substantial* relationships with *specific* prospective or existing customers or clients to constitute a legitimate business interest. Fla. Stat. § 542.335(1)(b) (emphasis added). WellCare fails to show it has a substantial relationship with any existing or prospective customer/state. Any existing contract it has with a state would not be disrupted by Preitauer's Aetna employment because WellCare and Aetna are not currently competing in the same markets within the four states Preitauer would work during the non-compete period. WellCare makes no argument that customer goodwill amounts to "legitimate business interests." Similarly, the record does not reflect Preitauer has received extraordinary or specialized training. While I discuss Preitauer's prior employment history in detail below, his long and distinguished resume indicates most, if not all, of his training occurred prior to his employment with WellCare. It was precisely this prior experience that

made Preitauer so appealing to WellCare. That leaves WellCare with its main argument; that confidential information and trade secrets amount to "legitimate business interests."[2]

As stated, a court in Florida must only construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests when the person seeking enforcement establishes such legitimate business interests. *See* Fla. Stat. § 542.335(1)(h). Wellcare argues its "legitimate business interests" include the restrictive covenants protecting confidential information and trade secrets, the existing and prospective competition between WellCare and Aetna within the same geographic region, and Preitauer's Aetna employment leading to inevitable disclosure of WellCare's alleged confidential and proprietary information. But WellCare's argument that it has "legitimate business interests" in its alleged confidential information and trade secrets Preitauer obtained while working on the Hawaii Model is not supported by Florida law.

In Florida, a trade secret is defined as information, including a formula, pattern, compilation, program, device, method, technique, or process that (1) derives independent economic value from not being generally known to and not readily ascertainable by others

---

[2] A protectible interest in the training or education provided must be extraordinary. "Extraordinary" is that which goes beyond what is usual, regular, common, or customary in the industry in which the employee is employed. An employee who is given the time and money for extraordinary training, thus providing that employee with a unique skill or enhancement of an existing skill, should not be permitted to benefit a competitor when the employee has contracted not to do so. *See Hapney v. Central Garage, Inc.*, 579 So.2d 127 (Fla.App. 2 Dist. 1991) (determination that 1990 amendment to § 542.33(2)(a), Florida Statutes (1989), should be applied retrospectively disapproved. *See Gupton v. Village Key & Saw Shop, Inc.*, 656 So.2d 475, 479 (Fla. 1995)).

who can obtain economic value from its disclosure or use and (2) is the subject of reasonable efforts to maintain its secrecy. *See* Fla. Stat. § 688.002(4). In an action involving alleged trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. *American Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Information generally known or readily accessible to third parties cannot qualify for trade secret protection. *Id.* Keeping this standard in mind, WellCare impermissibly seeks to protect information generally known and readily accessible to third parties (i.e. Aetna). Although WellCare desires to restrict the use and/or disclosure of the information, ideas, etc. that went into the Hawaii model, and the knowledge Preitauer allegedly gained post-implementation of the Hawaii model, this information is publicly accessible and therefore cannot constitute a trade secret. The Hawaii RFP is available as a public record, readily accessible over the internet, and any responses to it belong to the state of Hawaii.[3] To argue that the information contained within WellCare's bid in response to

---

[3] Specifically, Section 20.960 of the Hawaii RFP states in relevant part:

> "All proposals become the property of the State of Hawaii. The successful proposal shall be incorporated into the contract and shall be public record. The State of Hawaii shall have the right to use all ideas, or adaptations to those ideas, contained in any proposal received in response to this RFP. Selection or rejection of the proposal shall not affect this right.

(doc. 14-2 pp. 12-13).

the Hawaii RFP is confidential and/or trade secrets is misguided. WellCare also fails to describe with any particularity what the alleged confidential information and trade secrets Preitauer possesses that belong to WellCare. A blanket assertion that Preitauer is in possession of confidential information is not enough. Nor is parroting the language of the statute: Preitauer "had access to WellCare's business plans, formulas, compilations, methods, techniques, and processes…" and that "[t]hese trade secrets have independent economic value from not being readily ascertainable to third parties, including Aetna, who could derive economic value from such information," (doc. 4 pp. 3-4) (compare with FUTSA §§ 688.001-688.009).

Even overlooking the generality of WellCare's descriptions, and the language of the Hawaii RFP, nothing in the record indicates the knowledge Preitauer has is confidential or a trade secret. As the language of the confidentially agreement makes clear, the information must be both confidential and learned through Preitauer's employment. The confidentiality agreement states in relevant part:

> "…I [Preitauer], will not at any time during the term of my employment or after termination, directly or indirectly divulge, furnish, use, publish, or make accessible to any person or entity any confidential information (as defined herein and in subsequent policies and procedures of the Company), any memos, letter, records, reports, privileged member medical records or personal information (i.e. ss#'s, age, gender, health data), schedules or other information prepared or which may come into my possession in the normal conduct of my job. Such data will remain the property of the Company and I will not retain or remove any copies for any purpose other than the conduct of the business of CHM, Inc."

(doc. 2-1 p. 3). The agreement defines confidential information as:

> "…business, medical or personal information disclosed to me or known, learned, created or observed by me *as a consequence of or through the conduct of my job* at the Company. This includes but is not limited to computer data, manuals, printed materials, policies and procedures, financial information, member lists, provider personal data, provider lists, client lists, claims, member medical and personal information and/or other information that I may use or be privy to during the tenure of my employment."

(doc. 2-1 p. 3) (emphasis added). The agreement clearly forbids making confidential information accessible; however, WellCare itself made this information accessible when it placed its bid in response to the Hawaii RFP. Thus, this information cannot be confidential. And while the knowledge gained through post implementation of the Hawaii model *may have* been learned by Preitauer in his employment with WellCare, it its more likely that he was already in possession of this information given his extensive work history. WellCare's request for relief would preclude Preitauer from using knowledge and expertise obtained from previous employment, a request that cannot be granted.

The Eleventh Circuit has made clear that an employer cannot preclude its former employee from using contacts and expertise gained during previous employment. *See American Red Cross*, 143 F.3d at 1410 (citing *Templeton v. Creative Loafing Tampa, Inc.*, 552 So.2d 288, 290 (Fla.Dist.Ct.App.1989). Most, if not all, of Preitauer's knowledge and expertise is a result of his *prior* employment and not that with WellCare. This becomes abundantly clear upon review of his past work experience.

Preitauer has worked in the managed care industry since 2002 with Cigna Healthcare, Great-West Healthcare, and UnitedHealth Group (doc. 14-1 ¶¶3-6). The titles he held ranged

9

from "Director of Strategy and Business Development" with Cigna, to "Manager of US Markets Producer Programs" with Great-West, to "Senior Director and Vice President of Business Development and Sale Operations" with UnitedHealth (*Id*.). His responsibilities with Great-West included crafting, implementing, and administering innovative national contracts with vendors and providers (*Id.* at ¶ 5). While working for UnitedHealth, he was the senior leader in implementation of new Medicare Advantage markets across the country, including dual eligible programs (*Id*. at ¶6). Nothing suggests Preitauer's knowledge came as a consequence of or through his employment with Wellcare, a requisite limitation. The qualifying language of WellCare's own agreement states that confidential information be "…disclosed to [Preitauer] or known, learned, created or observed by [Preitauer] as a consequence of or through the conduct of [his] job at [WellCare]…" Additionally, Wellcare has not established the existence of confidential information or trade secrets as required under FUTSA. The record instead indicates that he used knowledge gained independent of WellCare in developing and implementing the Hawaii model. This becomes apparent when asking why would WellCare employ Preitauer for its Hawaii expansion efforts if it already had the know-how to do it itself? That leaves WellCare with its argument that Preitauer is in breach of the non-compete covenant.

The non-compete agreement states in relevant part:

> "For so long as I remain employed by the Company Group and for a period of one year thereafter (the "***Non-Competition Period***"), I will not, directly or indirectly, alone or as a partner, joint venturer, officer, director, employee, consultant, agent, independent contractor or stockholder…accept employment with, or otherwise provide any services on behalf of any entity (or any affiliate, subsidiary, division

10

> or other business unit of such entity) that provides managed care programs and/or services to individuals receiving benefit under any Medicare, Medicaid or S-CHIP government program, including any stand-alone prescription drug program, **within any state where the Company Group is doing business or is actively pursuing business opportunities which are known to me at the time I cease to be employed by the Company Group.**"

(doc. 2-1 p. 1) (emphasis original). WellCare argues this language prohibits Preitauer's employment with Aetna, but such an interpretation is too restrictive. The non-compete states that Preitauer is not to compete "…within any state where [WellCare] is doing business or is actively pursuing business opportunities which are known to [Preitauer] at the time [Preitauer] cease[s] to be employed by [WellCare]." Preitauer's non-compete agreement is therefore conditioned upon WellCare conducting business, or actively pursing business, within a state in which he is also working. WellCare has not adequately established the existence of competition in the same markets.

According to WellCare, Preitauer is in breach of the non-compete agreement because he has accepted employment with Aetna and will potentially work in Texas, Illinois, Missouri, and Ohio, states where WellCare is also allegedly in business. But WellCare fails to support its argument that Aetna and Wellcare are currently in competition within these markets. Moreover, WellCare can not show that it will potentially enter these markets while the non-compete agreement is still in effect (one year). Preitauer's affidavit makes this clear.

Preitauer is only going to deal with Medicaid and he is only going to work within Texas, Illinois, Missouri, and Ohio during the non-compete period. Turning first to Texas, Wellcare only provides Medicare services within the state and does not provide any Medicaid

11

service. As such, Wellcare and Aetna are not in competition in Texas. In Missouri, Wellcare does provide Medicaid services but its contract expires on July 1, 2012, and members have already begun to transfer to other plans. Similarly, in Illinois while WellCare does provide Medicaid services, these services are only provided to mothers and babies with Aetna providing Medicaid services based upon age, blindness, and disability. And in Ohio, Wellcare's contract is set to expire on December 31, 2012, and Aetna's contract begins January 1, 2013. Thus the bidding process in Ohio, while being challenged, is complete.

Just because WellCare and Aetna are both in the same state does not result in the absolute that they are in competition. In fact, Wellcare cannot actively pursue business in any of these states because there are no outstanding RFP's. WellCare's best rebuttal is that by appealing its two lost RFP bids in Missouri and Ohio it is currently in the same market with Aetna and still actively pursing business. Not only is this argument unconvincing, at the hearing WellCare's counsel stated that WellCare is not even involved in the challenge in Missouri, only Ohio. Nonetheless, appealing a contract that has not been awarded to your firm and actively responding to an existing RFP are two very different propositions. The bidding process is undoubtedly fluid, but WellCare fails to point to a RFP on the immediate horizon within these four states. Simply put, WellCare and Aetna are not competing in the same markets as none of the four states in which Preitauer will potentially work during the non-compete period are requesting WellCare's services. WellCare has failed to meet its burden of showing a legitimate business interest warranting protection.

Even if WellCare could establish a legitimate business interest, WellCare has not

established a likelihood of success on the merits regarding whether Preitauer has in fact breached his agreements. "For a breach of contract claim, Florida law requires a plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). While no party raises an issue with contract existence, whether a material breach occurred and whether damages are present is at issue. As stated, the parties are not in competition within the same markets; hence, WellCare's claims of a material breach are unconvincing. Likewise, its assertion that it has or will suffer damages is unpersuasive. This makes injunction relief all the more inappropriate. In short, WellCare has failed to show it has a substantial likelihood of success on the merits for either claim.

*2. irreparable harm*

The absence of a substantial likelihood of irreparable harm, standing alone, precludes entry of a preliminary injunction. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). Florida law provides that "[t]he violation of an *enforceable* restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j) (emphasis added). As detailed above, WellCare fails to show a substantial likelihood of success as to whether the restrictive covenants are enforceable or that Preitauer is in violation, and thus, there is no presumption or existence of irreparable injury.

Irrespective, WellCare fails to show irreparable harm will result from Preitauer's employment. In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. *Siegel*, 234 F.3d at 1176. Keeping this in mind, WellCare does not sufficiently prove it suffers, or has suffered, any actual or imminent harm. The closest WellCare comes is arguing Preitauer's employment with Aetna will *inevitably* lead to disclosure of WellCare's alleged confidential information and/or trade secrets. Such an argument is speculative. Furthermore, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham*, 808 F.2d 815 at 821. As the Supreme Court noted, "[t]he key world in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). In its complaint WellCare alleges it will be harmed both irreparably and monetarily if Preitauer is permitted to work for Aetna (doc. 2, ¶¶49, 67 C., and 73 C.). Based on WellCare's own request for relief, any harm suffered by WellCare can be quantified into an award of monetary damages. Thus, WellCare has not shown it will suffer irreparable harm without the issuance of an injunction.

### 3. balance of harm

WellCare must also establish that it's threatened harm outweighs the harm a preliminary injunction may cause to Preitauer. *MacGinnitie*, 420 F.3d at 1240. In this

instance, the balance of harm tips in favor of Preitauer. WellCare's desire to enforce restrictive covenants against Preitauer, where it has not demonstrated that those restrictive covenants are actually being breached, does not outweigh the harm Preitauer will suffer in being restricted from working. Furthermore, the enforcement of the restrictive covenants would not threaten any "legitimate business interests" for WellCare because it has not established any "legitimate business interests." Moreover, the threat of WellCare's percieved loss in the industry, and its assumed inability to maintain its position at the forefront of the industry, pales in comparison to the harm Preitauer would suffer if he is restricted from working in an industry in which he has gained extensive experience prior to ever working for WellCare. As such, WellCare has failed to show its threatened harm outweighs the harm a preliminary injunction would cause Preitauer.

*4. public interest*

WellCare asserts entry of a preliminary injunction would serve the public interest by enforcing valid contractual provisions entered into freely by protecting confidential and proprietary information and by enforcing a non-compete covenant permissible under Florida law. For all the reasons set forth above, WellCare's argument is unpersuasive. Additionally, where an otherwise *enforceable* restrictive covenant exists, Florida law requires a court refusing enforcement on the basis that it violates public policy to specifically articulate the public policy violated. Fla. Stat. § 542.335(1)(i) (emphasis added). Further, Florida law requires the court to find the public policy requirements it articulates substantially outweigh the need to protect the *legitimate business interests* established by the person seeking

15

enforcement. *Id*. (emphasis added).

In a case such as this, where WellCare has failed to establish legitimate business interests and that Preitauer in fact breached an enforceable covenant, the refusal of the Court to enforce the covenants does not disserve the public. Instead, allowing Preitauer to work for Aetna, in markets distinct from WellCare, will better serve the public. Medicare and Medicaid are federally and state funded health care plans sourced through taxpayer dollars. The public has an interest in seeing their tax dollars used in the most efficient, cost effect manner. Prohibiting Preitauer from utilizing his expertise does not advance this interest. Accordingly, the public interest considerations weigh against entry of a preliminary injunction.

*D. Conclusion*

The entry of a preliminary injunction is an extraordinary remedy to be utilized only when a party carries its burden as to the four elements set forth above. *Four Seasons,* 320 F.3d at 1210. Wellcare has failed to carry its burden. Accordingly, it is recommended that WellCare Health Plans Inc. and Comprehensive Health Management Inc.'s motion for preliminary injunction (doc. 4) be denied.

IT IS SO REPORTED in Tampa, Florida on May 23, 2012.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Hon. James S. Moody
 Counsel of Record